This is the time set for re-hearing en banc in the case of J. J. Individually and successor in interest to the deceased Alea Jenkins by and through his guardian ad litem Jeremy Highlier versus the City of San Diego So if the lawyers are ready to proceed you may come forward May it please the court, Meg Haram for Plaintiff Appellant J. K. J. and I'd like to reserve six minutes for rebuttal. During an hour-long ride to the police station, Alea Jenkins screamed in pain. She begged for help. Her breathing was ragged, her body shook, and at times she became limp and non-responsive. Officer Durbin heard and observed all of this, but he did not obtain medical care. When they arrived at the station, he dragged her limp body out of the car, he fingerprinted her on the garage floor, and then he stuffed her body back into the car. After leaving her there for more than 11 minutes, he returned to find that she had stopped breathing. Now, Officer Durbin apparently believed that Ms. Jenkins was faking all of that. But his subjective beliefs are not relevant to the clearly established inquiry. If it is plausible to conclude that a reasonable officer would have understood that Ms. Jenkins was in medical distress, then those are the facts on which we do the clearly established inquiry. And because it is an obvious and clearly established violation to deny or delay medical care to someone in distress, Officer Durbin is not entitled to qualified immunity. Now, I'd like to turn first to what a reasonable person would have understood by the time they arrived at the station. So, this is approximately hour 1, minute 17 of the video when they've arrived at the station. At that point, what Officer Durbin is faced with is a woman in the back seat of his cruiser, face down, she's panting, she's twitching, she is intermittently screaming and asking for help. She's so limp that when he drags her out of the car, her legs just sort of flop out and hit the ground hard. Then she's laying on the floor of the garage. She's unable to sit up. She's unable to stand. She continues to pant. She's mumbling incoherently. Not only all of that, but Officer Durbin has also just been in the car with her for about an hour, where she was also intermittently screaming and asking for help, where she was panting and her breathing was irregular, and he knew that she had vomited about an hour before all of that. So, the question then becomes, is it plausible, and I stress plausibility because we are at the motion-to-dismiss stage, is it plausible that a reasonable officer who saw and heard all of that could understand that Ms. Jenkins was in medical distress? And because the answer to that question is yes, we then ask, was the law clearly established on those facts? And there, too, the answer is clear because this court has said in Sandoval and Clement and other cases that when someone is in medical distress, when they're exhibiting symptoms of medical distress, an officer must not deny or delay medical care for that person. And so, this is the way that this court... Doesn't our clearly established law require that that injury or need to be obvious? Your Honor, I'm not sure if it uses the word obvious, but I think some sort of significant medical distress is required. Here, I think that's one of the mistakes that the majority made was to say, you know, in looking for clearly established law, it assumed that it wasn't obvious and that Officer Durbin should not have understood she was in medical distress. But the question of whether it's obvious or not, you're saying that should be a jury question? That's correct. But the clearly established problem is decided by the court though, right? So... That's right. So, you're saying the panel majority should have assumed that it was obvious? Your Honor, I'm saying where it's plausible for a reasonable officer to look at all these facts to see what Ms. Durbin, if it's plausible that an officer would have understood she was in medical distress, unlike what Durbin apparently understood, then that's the assumption, yes, when you're looking for clearly established law. Because, ultimately, if a jury could conclude that a reasonable officer would have understood what was going on, then we do need to leave that inquiry to the jury and do the clearly established analysis on those facts. And, you know, treating that first question as a fact question is what this court has always done. So, for instance, in Wilkins, this court said, whether a mistake of fact is reasonable or not is not a legal inquiry, but a question of fact best resolved by a jury. It's also what this court said in Torres. There, it says that, you know, even if a jury were to find the mistake was reasonable down the line, it would be inappropriate for the court to make that determination if there's something in the record that suggests otherwise. Counsel, you got our order on Friday, right? I did. So, I have a question about that. You alleged in your complaint that the officer knew or should have known, correct? That's correct. So, what you said a few minutes ago in your argument, apparently the officer believed she was faking. If, hypothetically, we were to decide that we were wrong in Castro and that there should be a subjective standard rather than an objective standard, would you say, with that hypothetical in mind, that you survived that standard to move on to the next stage or not? And if yes, you believe you would survive, tell us why. Sure, Your Honor. So, I'd like to make two points there. First, just as an initial matter, I don't think that question is raised in this case because it is a Fourth Amendment inquiry. In Tatum, this court said that post-arrest medical care is a Fourth Amendment issue. And since Tatum, it's continued to say that the Fourth Amendment governs post-arrest medical care. So, I don't think the Fourteenth Amendment standard is implicated by this case at all. But, accepting the premise of that question, I would also just note that, of course, Castro did settle that question in 2016. And that was an en banc decision by this court. But, if the court were to revisit that and find that some sort of knowledge was required, that would also be possible on this record, right? There are a number of facts here that would allow the ultimate fact finder to find that the mistake was not an honest one, right? He turned around at one point in the ride to check if she was breathing. Now, if you think someone is perfectly fine, if you think they're faking, you're not going to check to confirm that they're breathing. He also, right at the beginning at that traffic stop, asked if she was withdrawing. He knew that they found a saran wrap-like thing in the car that's used commonly used for drugs. And then, at the very end of their interaction, when they're in the garage, and someone else asks what's going on, one of the first things he says to them is, you know, she had a warrant for narcotics and she may have ingested something. So, all of these facts could lead a jury to conclude that he did have knowledge that something was going on here, decided to ignore it. Now, and that would satisfy the subjective prong if this court were to overrule Castro. But again, you know, I don't think the 14th Amendment question is implicated because this is a Fourth Amendment case and because the Fourth Amendment inquiry is an objective one and currently under settled law, the 14th Amendment one is as well. Under those legal standards, the honesty of his mistake really is not a part of the inquiry here. Did you include a claim for the child as well as for the decedent? That's correct, Your Honor. And so, your position now is confusing me somewhat when you say that you think both of those are controlled by the Fourth Amendment? No, Your Honor. So, the denial of medical care claim is controlled by the Fourth Amendment, but the deprivation of life without due process claim is governed by the 14th Amendment. Okay, so I just heard you to say that the 14th Amendment standard is not implicated in this case. I apologize, Your Honor. Just as to the kind of the primary question accepted by this en banc panel, but the 14th Amendment would govern the deprivation of due process claim. Okay. Yes. There's quite a bit of briefing here, and I just want to be clear that I didn't miss something. Have the parties asked us to revisit Castro? No, Your Honor. And that's another point I should note. Even defendants agree, and I'll just quote from page 34 of their appellee's brief at the panel stage, quote, the deliberate and different standard is an objective one. And they cite Gordon for that proposition, and Gordon, of course, applied Castro to the medical care context. So, that is not even an issue that has been raised by the other side or accepted for review by this en banc court. And did the district court consider the legitimacy of Castro or whether or not Castro should be overturned? It did not, Your Honor. So, I don't think that question is really one that can be reached by this court. Wait, wait. Why would the district court have considered, could the district court overturn Castro? No, Your Honor. I think it just goes... Could the three-judge panel overturn Castro? No, Your Honor. Can we overturn Castro? I don't think you can in this case, Your Honor, because again, it hasn't been raised by the other side and there hasn't been... Why would they have raised it? Because I think everything they briefed up to this point has been to attempt to not have en banc granted, right? So, it'd be very weird to say, don't grant en banc, but go ahead and please do grant en banc and overrule Castro. That's kind of a hard argument to make. Well, Your Honor, they can always make arguments in the alternative, but I think not only did they not argue that, but they have explicitly accepted that the objective standard does apply under the 14th Amendment. Wouldn't it be true the first opportunity they've had, when it's actually a live controversy in front of them, instead of a hypothetical about whether we should overrule Castro, would be when your colleague stands up at the podium? Like, every brief that's been filed so far was before this case, before en banc was granted, correct? Well, except for their... Well, yes, of course, Your Honor. Even their opposition to en banc was before. Sure. And so, like, they, you know, be kind of... I mean, I suppose they could have, you're right. They could have wasted some precious space in their en banc thing to be saying, please don't grant en banc, but if you do, you should overrule Castro. But I don't know that they necessarily... they could have done that, I suppose, but what authority do you have that they necessarily waived it by not raising it in their inner opposition to en banc? Well, Your Honor, I think, you know, just affirmatively embracing the controlling standard goes in that direction. But even if this court could revisit the issue, I think, again, because the primary issue on which this court granted en banc review is this denial of medical care claim and the mistake of fact analysis surrounding it. And that claim does arise under the Fourth Amendment. Can I ask you about that? So is your position that it's established that in a Fourth Amendment claim, it's an objective standard? So if it... I understand that if we have an objective standard in the Fourteenth Amendment, it would be kind of odd to have a subjective standard in the Fourth Amendment. But if we had a subjective standard in the Fourteenth Amendment, why wouldn't we... why couldn't we have a subjective standard in the Fourth Amendment context also? Well, Your Honor, it's settled law in this circuit that the Fourth Amendment is an objective inquiry. And, you know, that's what this court said in Tatum and in subsequent cases applying Tatum and citing Tatum. And, you know, not only that, but it's also settled law in this circuit, of course, that the Fourteenth Amendment is an objective inquiry at this... at this point. And so... But this is an en banc court. That's correct. Let me ask you a question about your Fourteenth Amendment claim. Has this court found a violation of a child's Fourteenth Amendment right to a familial relationship with their parent under similar factual circumstances as this case? It has under their parent... for loss of a parent, Your Honor. I'm not sure about the similar factual circumstances. For a child's familial relationship? That's correct, Your Honor. And are you aware of cases in other circuits that have decided that issue in the context of a child relationship under similar factual circumstances? I'm not, Your Honor, but I'm happy to submit supplemental briefing on that if this court would like. Do you have a proposed standard that we would apply to the familial association claim? Your Honor, on that claim, I'm not sure we have additional than what we've put in our briefing. However, I would be happy to submit additional briefing on that if this court would like. The district court thought that might need to be additional briefing because she said... she thought it was uncontested that the decedent actually had more than one living minor child. Is that correct? That's correct, Your Honor. And I think that was just to determine how the case would proceed, not whether or not it could proceed. Well, yes, but I just wanted to be sure that we're clear on this because she was postulating that there might be a need to think about joining other indispensable parties, and you're not contesting that, are you? No, Your Honor, we're not. Okay, and then I just have one other question about the... it's kind of an odd posture. I think that there was a question about whether the child's claim was duplicative as to the mother's claim. And my read of the record, this gets a little squirrely, but my understanding is that the defense may have taken that position in the motion to dismiss and that your client took the position that the standard was the same as opposed to the claims being the same. Is that right? So, Your Honor, because at various points in this case, the 14th Amendment standard has been applied because the courts have said, you know, whether you're talking about the objective 14th or the 4th, we're talking about essentially an objective reasonableness standard. So in light of that, assuming the 14th Amendment applied to the deprivation of life and the medical care claims, it is our position that if you're going to apply the 14th Amendment objective standard, then it is... they essentially rise and fall together because they're governed by the same... I don't think you're answering my question, but maybe that's because I'm not answering it very well. It seems to me to be clearly the case that the child has an independent claim that speaks to a different harm than the decedent. That's correct. All right. So I have some sympathy for the district court in trying to ferret that out from the complaint. I thought that those claims seemed a bit conflated, to be frank, but I want to be clear or make sure that I'm clearly understanding that your intent was to allege both of those claims. Is that right? That's correct, Your Honor. Okay. So then if you could back up to where I was, I think in response to the motion to dismiss, the district court understood that the defense had taken the position that the same standards apply. And I think took the position that the claims were duplicative and then understood that your client's position was that the same standard applied. Yes. All right. Did you ever take the position that the claims were duplicative? No, Your Honor. We did not. Thank you. And the only reason... I just want to be clear to follow up on Judge Kristen's question. The only reason that the 14th Amendment came up to litigate the Fourth Amendment claim through the lens of the 14th Amendment, because as you said, the standard is clearly the objective standard in both contexts, so it really wouldn't have mattered. And not knowing at the time and not arguing and not having had the district court or the other side claim that we should be revisiting that standard, there was no reason to differentiate between your 14th Amendment arguments and your Fourth Amendment arguments. Is that right? That's exactly correct, Your Honor. And I think, I apologize, Judge, that's what I was attempting to say in response to your earlier question, but that's exactly right. And so if I may now just turn back to the mistake of fact analysis, I want to just give an example from another circuit, from the Fourth Circuit's en banc decision, because I think it's a particularly clear and simple application of this doctrine. So in that case, the en banc Fourth Circuit was looking at a case where an officer used a gun to shoot someone who was fleeing and who was unarmed. Now, both sides stipulated in that case that the officer made a mistake of fact, that he meant to use his taser, but instead he used his gun. And the court did exactly the analysis that this court has done and that we are urging the court to apply here. It said first, because the plaintiff could show that a reasonable officer in that situation would have realized that he was holding a firearm rather than mistakenly thinking he was holding a taser, it looked for clearly established law on the firearm. It said, you know, shooting an unarmed fleeing person, it violates clearly established law. It did not look for clearly established law on a taser. And it did not look for clearly established law based on an officer who thought he was using a taser, but actually used a gun. And so that's the analysis that we're asking the court to apply here. That's also what this court has done in its own cases. So I'll just point the court to Wilkins, for example. In that case, an officer accidentally shot another officer because he thought that it was a suspect. The officer was in plain clothes. He didn't realize that this was actually a fellow officer. And the court said first, you know, was it reasonable not to understand that the person he was shooting was another police officer? Because it found that a jury could find, yes, that that was unreasonable. You know, a reasonable officer would have understood that was a fellow police officer. It looked for clearly established law, assuming the fellow police officer. And it said, you know, the Fourth Amendment bars the use of deadly force against a fellow officer. If I can ask a question here. I mean, the facts here are a little bit tricky because it's, this isn't the case where the officer completely ignored Ms. Jenkins. You know, whenever, during most of the car ride, whenever she was moaning or screaming, he would always ask a follow-up question, asking, is everything okay? What's wrong? Do you need something? So, I mean, that's a long way of saying, I mean, could this case be characterized as, is it clearly established that an officer had to do something more when a detainee doesn't respond to any follow-up questions about her medical condition? I mean, the hindsight we know, maybe she didn't respond because she was in such distress. But isn't that a way to perhaps view this case? I think that would be a fair way to view the case, Your Honor, because when you, you know, if you're asking someone how they're doing and they either are unable to respond or all they can do is scream or plead for help, then the clearly established law here does say that you need to obtain, you know, medical care for that person. Just asking someone how they're doing and then doing nothing with the negative information you receive does not suffice. Are there cases that specifically say that? Your Honor, in, with respect to asking how someone is doing? Yeah, I think that's kind of the tricky part here is that, if the officer here just put on his ear pods and just ignored, I think it'd be a much easier case. Here, it's the tricky part is he does ask follow-up questions and she doesn't respond. Your Honor, I'm not sure that actually does make it a more difficult case because, you know, of course a jury could say, well, if you are asking what's wrong and then you realize you're not getting anything back or you're only getting, you know, pained screams back, then perhaps there's all the more reason for you to call for help than if you didn't, you know, realize what was going on behind you at all. So do we focus on the obviousness of it or do we go through a different sort of analysis? Because it seems like this is very similar to the case of Conn versus City of Reno. Are you familiar with that case? I'm not, Your Honor, but I think there are two ways to look at this case. So there is the more standard, clearly established inquiry where you look for prior case law and under that approach, cases like Clement and Sandoval, which say that you can't deny or delay medical care to someone in need, clearly apply here. And I'll just note quickly that this court has often applied exactly that level of generality in stating the relevant, clearly established law. And then there's a second way of looking at this case, which is under the Hope-Taylor obviousness doctrine where you don't even need cases like Clement and Sandoval because it's what could be more obvious than a person in medical distress needs to get access to medical care. But either way you look at this case, we have kind of surmounted that clearly established inquiry on the proper facts, which are what a reasonable officer would have understood in this situation. Counsel, how does... Under your view, it seems like any mistake of fact has to go to a jury. Is that correct? No, Your Honor. But let me put it this way then. When can an officer be entitled to qualified immunity for a mistake of fact? Sure. So I think there are two circumstances. One is where the court can say as a matter of law, this was reasonable. It's just not even plausible that this was an unreasonable understanding. So to give you an example of a case that arose in that posture, there's the Eighth Circuit case McKinney that we cited in our briefing. In that case, officers had gone in. This was an unlawful entry claim. And the court concluded that they made a mistake of fact in thinking the house was abandoned, but it was a reasonable mistake because every single factor in the record suggested it was in fact abandoned, right? The house, there were no cars. No one answered when they knocked. The back door was propped open and the fridge was open and empty. Cabinets were open and empty. No one said anything. No furniture was there. No lights were on, right? Every single factor allowed the court to say, look, as a matter of law, you did make a mistake of fact, but that was a reasonable one. And so that's one situation in which you can make a mistake of fact and still get immunity. Another is if you make a mistake of fact, the court finds that it is an unreasonable one, but says that the law is not clearly established even on the facts that a reasonable officer would have understood. And so we're certainly not saying that, you know, you make a mistake and that's it in terms of qualified immunity. But here where there were so many things, you know, unlike that Eighth Circuit case, that would allow the ultimate trier of fact, the jury to conclude that a reasonable officer in this position would have understood that Ms. Jenkins was in medical distress. Those are the facts that you have to look at when you're doing the clearly established inquiry. I'm not sure they are. Sometimes some of your arguments seem to slip into the summary judgment standard here, as opposed to the plausible pleading standard for 12B6. Do you want to back up and take another run at that? Because you've confused me now about which it is you're taking on here. Sure, Your Honor. So it certainly is a plausibility standard. So the question really is. But the 12B6 standard. That's correct. Yeah. Stage, I should say, 12B6 stage. That's correct, Your Honor. And I only invoke the jury sometimes because I think because there is a video in this case, sometimes it's easier to imagine a jury watching the video and drawing conclusions. But you're absolutely correct. You're kind of going fast here. And I just don't want to lose this thread because I think it's very important. I don't think it's contested that the district court understood that the video was incorporated into the complaint, right? Yes. And so we're looking to see, isn't that our job? To see whether or not the complaint plausibly alleged a cognizable claim. Yes. Right. At summary judgment, it seems to me there's lots of issues about what a jury can do here. Sure, Your Honor. Yes. But we don't need to reach that today. No, you don't. You only need to find that it's plausible that a reasonable officer in this situation would have understood that Ms. Jenkins was in medical distress and that the law is clearly established on those facts. I'm sorry. Has there been any Supreme Court case subsequent to Castro that cast doubt on Castro? No, Your Honor. In fact, as far as I'm aware, the Supreme Court has never applied a subjective standard to claims about treatment by pretrial detainees. In both Kingsley and Bell, it applied an objective standard. And especially in Kingsley, it distinguished between the 14th Amendment standard and the 8th Amendment standard in explaining why an objective standard would apply. Can I ask you to go back to Judge Lee's question about the questions that the officer asked in the car? Because when you first started out, you were describing the events after they arrived at the station. So what is your position as to the point at which it became obvious such that the officer was required to do something? Sure, Your Honor. So I think there are a number of points on the ride where that obligation would have arisen. The reason I focused on the part where they get to the garage is because I think by then, it really is incontrovertible. So because by the time they're in the garage, she's face down, he's standing right there next to her. She's twitching, she's panting. She clearly has no control over her limbs. So it's particularly obvious at that point. I think it's plausible to conclude that a reasonable officer would have understood the need for medical care even earlier. Perhaps when she was screaming, please help me, please help me. Oh my God, stop, stop, stop. And that was around hour one, minute four. Or perhaps when he stopped and said, okay, still breathing. And he felt the need to check on that. That was hour one, minute 10. Or maybe when hour one, minute 14, he actually pulled over to look at her. Her head tumbles out. She's pleading with him for help. And he just kind of shuts the door on her head. She's screaming, no, I'm sick. Help me, please help me. I'm telling you I can't. So I think there are a number of points on the ride where it's certainly plausible that a reasonable officer would have understood the need to obtain medical care. Counsel, even if you're right on what we should do with this case, this is potentially an important question. Because if there is a particular point in time, and you did get to go to trial, there could be testimony that would say by that point in time, her life was already gone. And you have like no material damages. So the point, if you're right, in general, the point in time could have a lot of significance down the road. Your Honor, at this point, because we are at the motion to dismiss stage, the question is just, is it plausible that had she obtained care earlier, we would have had a different outcome? And I think it certainly meets that plausibility standard. I take your point. So you think that if we're going to go your way, we should just say it generally and not say, for example, well, you know, nothing should have, was obvious to the objective person until the one hour mark. So the constitutional violation, if there was one, it's only plausible to find that it began at the one hour mark? Or you're saying, no, we should just, if we're going to agree with you, let the whole thing go? Your Honor, I think if this court were to agree, it just needs to find that it became plausible at some point for a reasonable officer to conclude that she was in medical distress. And that's all this court needs to decide. And then at a subsequent stage of the case, at summary judgment, maybe there'll be expert reports, coroner's reports, then the issue of causation that you're raising would be part of the question. But here, because it's just a plausibility standard, the court doesn't need to decide, you know, a particular point in time. Can I ask, why is that the question? Why isn't the question, would a reasonable officer made the same mistake of fact? Your Honor, I think that that is perhaps a, so in this court's case law, the court has asked, you know, would a reasonable officer have correctly understood the circumstances? That's how the court has phrased the question in these prior cases. But wouldn't it be more consistent with the qualified immunity inquiry to say, was it reasonable for the officer to make the mistake of fact? Because, you know, it's very clear, it's only, qualified immunity is deprived of only the incompetent. So if a reasonable person would have made the same mistake, then that officer is not being incompetent. Well, Your Honor, I think if, you know, I agree that qualified immunity is not for the incompetent. Of course, that's what Malley said. And if a jury could conclude that a reasonable officer would have correctly understood, then I think the inference that an officer who made the contrary unreasonable mistake is in that category of sort of incompetent officers that we don't. Both could happen. A jury could find that the officer would have understood, but a jury could also say the reasonable officer would have made the same mistake. You're saying... They're both consistent. That a jury could conclude that a reasonable officer could have either made the mistake or not made the mistake, Your Honor? Either they would have understood it was obvious, or that a reasonable officer would have made the same mistake. My question, why is that not the standard? Your Honor, I'm not sure I have an answer to that question. What I do know is that this court and its sister circuits have asked, could a reasonable officer have properly understood the facts here and then done the clearly established analysis on those facts? And so we urge the court to be consistent with its case law and with the case law of other circuits in applying that same approach. Your Honor, I see I'm very low on my time. Thank you. Yes, I'll give you a few minutes for rebuttal. Okay. Thank you, Your Honor. And I'll reserve for rebuttal. Thank you. May I proceed? You may. May it please the court. I'm James Jardine, counsel for the appellees, Officer Durbin. Your Honors, this is, I think, a highly unique situation that's presented in this case. As Judge Bumate was noting, we have two sets of facts, two, if you will, narratives that Officer Durbin is required to balance as he's making decisions, as the encounter is proceeding. And I don't want to, for a moment, suggest that what we're confronting here is not a tragic situation. It is from any perspective, I believe. But he has plausible information. He's taking her at her word that what she is suffering from is pregnancy. That's the cause of her vomiting. And this allays concerns at the most immediate moment when they literally had already summoned medical care. They cancel the paramedics. And he proceeds to transport her. And during the course of that ride, in addition to her condition and her cries and her groaning, she also repeatedly is emphasizing that she absolutely does not want to go to jail. Now, Officer Durbin doesn't know this at the time, but Ms. Jenkins knew that she was going to go to jail. She knew that she had secreted narcotics in her underwear. And she knew that she was facing jail if she was positively identified and arrested on that warrant. Could I ask you to clarify what your position is on the standard that we're applying here? Your friend on the other side noted the statement in your brief that the deliberate indifference standard is an objective one. Is that still your position? Well, that's our understanding of current controlling law under Castro. So we did not have a reason to dispute that. And indeed, we abided by that in all of our briefing. But the panel has requested that we address that question. It's a little bit more involved and tougher discussion even than talking about the simple facts of the case. But the Kingsley decision, I guess, I don't know if inaugurated is the right word, but it completely changed the standard as it's applied in these cases. But you would agree with me that in the Fourth Amendment claim, which is really the survival claim, the medical care claim, that is she's not a detainee. She's an arrestee. So in the context of the Fourth Amendment claim, this is an objective standard regardless. And so what you're talking about is the 14th Amendment claim, correct? Where we have a discussion about the difference in the standard. Yes, Your Honor. That's my understanding. And the 14th Amendment claim relates to the familial association, deprivation of familial association, not the deprivation of medical care during the seizure, which is the Fourth Amendment claim. Yes, I understand that to be the substantive due process claim. I think it was the third claim in the First Amendment complaint, Your Honor. And in the district court, you never argued that the familial association claim should be analyzed separately from the Fourth Amendment claim. Am I right about that? I believe my predecessor counsel argued that it was duplicative of the first claim. I believe that that was largely the basis upon which the district court decided to dismiss it. I think the district court also noted that there was a procedural question under California law whether or not there was a failure to join indispensable parties because there were two additional errors that were established by the copies of the birth certificates, I believe. But I think that's a different issue, though. And so what Judge Friedland's getting at is the question I asked earlier. Wasn't it the city's position that the two claims, the child's claim and the decedent's claim, were duplicative? Yeah, I had acknowledged that. Yes. Yes, Your Honor. That was the argument. I think that's what Judge Friedland is following up on. And so you never argued that to violate the familial association right, there needed to be an intent to hurt the son, for example. That was never argued because you never distinguished the two claims. If I'm pausing, it's because I wasn't handling the case at that point. But I do not see that in the record, Your Honor. That's correct. But if we are going to talk about what standard applies under the 14th Amendment, if that is a question before this Court, then I think, if anything, the current state of our qualified immunity case law demonstrates that an objective standard for deliberate indifference has been highly problematic. But why is that the question before this Court? I mean, backing up, is that a question that was raised at any point in this litigation until the Court's order on Friday? I'm just responding to the Court's order. Well, no, and I'm not faulting you for doing that. I mean, it would be, you get a suggestion that there might be an argument that would help you win the case. It would be malpractice not to embrace it. But just so we're clear, right, this was not something that came up at all until Friday, was it? No, Your Honor, it wasn't. So if we view it as forfeited or perhaps as affirmatively waived by the statement I read Why would it be appropriate for us to excuse the waiver or forfeiture? I haven't viewed it in terms of a waiver, Your Honor, because we weren't attempting to assert it. But as I understand it, when the case, when the Court takes a case up in bank, it assumes jurisdiction over the entire case. If the panel is wishing to revisit Castro, as you've stated, it's certain You might be assuming something. I might be, Your Honor. We'd ask you to address it. But the question I think that several laws have tried to get at is to confirm whether this was raised before the district court. And I think you've said no, right? I don't see how I could argue otherwise, Your Honor. The record is what it is. Hence the forfeiture inquiry that Judge Miller is trying to probe. If the Court would not like to hear any further on that, I will proceed to something else. I was not intending to waste anyone's time. If you have an argument for why it's appropriate for us to consider it now, when it's been raised for the first time at this stage, I would like to hear the argument. But the question is, is there such an argument? There's two arguments, right? There's the substantive argument about which standard we should have. And then there's what I think Judge Miller and others are asking about is, do we even, as a panel, have the ability to consider that because you didn't raise it in front of the district court? And I think that last question is what some people are asking about now. Your Honor, until I got the order on Friday, it had not crossed my mind. So I would have to concede that it's not something I raised before, nor had any other counsel in the case. So far as I am aware, I've reviewed the entire record. I don't see that. And you could have asked for supplemental briefing when we took the case on bunk, but you never did that, right? No, we responded to the questions that were raised by the petitioner, Your Honor. Can I circle back on it in sort of a different tack, which is, you've heard me ask opposing counsel to remind her this is at the 12B6 stage. And so we're looking at plausibility. And I think you have a really strong argument vis-a-vis Monel. But I just want to talk about the child's claim and the mother's claim, those two claims, and ask you, what is the city's strongest argument that the complaint falls short of plausibly alleging cognizable claims arising from the death? Fourth and 14th Amendment. Because I believe that it's plausible that Officer Durbin, confronted with the information that he had received, reasonably concluded that he was not witnessing a medical emergency, but rather someone who was suffering from, not to be informal, morning sickness. I do not mean any disrespect to anyone, but perhaps putting on an act out of a very sincere fear of being returned to jail. So that's the question. A law enforcement agent in Officer Durbin's position confronted with the information that he was receiving from Ms. Jenkins, is it plausible that he would have concluded that he was not witnessing a medical emergency that required the immediate summoning of emergency medical care? Counsel, counsel. Yes, you are. I'm sorry. That might, I guess, on a cold record, that might be, you know, a cold transcript. That might be, at least in my view, a more effective argument. But here the video was incorporated by reference. And so you have this individual who at one point says she's pregnant, but then at another point says she was on her period, which seems inconsistent. And then it's the deterioration or what I would, others have called the dramatic deterioration of Ms. Jenkins. And her affect, and then also the fact that at one point, it seems like she's barely conscious. And clearly, it seems like suffering from some sort of medical condition. It seems like even if it was just a pregnant woman who is throwing up and suffering in the way that appears that she is. I mean, again, if we just had a cold transcript, we might not be able to appreciate it. Here, is there no disconnect between the officer's response and what is seen in the video? I don't think there's a disconnect if we consider the fact that her condition was intermittent throughout the course of the ride. Even I think as late as one hour and 14 minutes into the encounter, she very clearly and coherently responds to a question and indicates, yes, please, she would like some water. And I think the question then is for a law enforcement agent in Officer Durbin's position. I mean, context matters. But isn't what you're arguing right here, taking the facts in a light most favorable to the defendant. And isn't that exactly the opposite of what the rules of civil procedure require when we're deciding a motion to dismiss, which is that we should be construing the facts in a light most favorable to the plaintiff? No, Your Honor, that's not my attempt. What I'm trying to show is that the information that he was receiving as the encounter proceeded was consistent with the assumptions that he appeared to be operating on. His conduct was not different from what he had identified as what he was concerned with. But that's taking the facts in his favor, right? Maybe a jury could watch this video and think the officer had very good reason to think she was faking. But why couldn't a jury also watch this video and think any reasonable officer would have thought she was in very serious medical distress? I mean, it seems like maybe both of those are plausible. But if both of them are plausible, then the plaintiff gets to go forward, right? At this stage. But the burden at this stage with respect to qualified immunity is on the plaintiff and not upon the defense. That's the difference, I think, Your Honor. They have to establish that their version of events has to control. And what we're trying to say is that. But our case law says that we take the facts in the light most favorable to the plaintiff, and then we ask whether that's a violation of clearly established law. You're going back on the facts, not on the law, as far as I can tell from what you're saying. I'm talking about the facts now. That's correct, Your Honor. But if we consider the state of the law at the time, I'm not aware of any case that addresses facts like this in any jurisdiction. I know that we don't need a case that's on all fours. But I'm not aware of a case where an arrestee's condition deteriorates over a course of time, but there's no obvious injury to her. This is not an injury that she suffered at the hands of any of the officers. This is not an injury that she suffered during the course of the arrest. If anything, it's an injury that occurred before the arrest as the car was being pulled over, which is what we have to assume. What issue of the law is it that you're pushing back on? You're not contesting, are you, that he would have had an officer, would have had an obligation to obtain medical care if he had an arrestee who was in obvious medical distress, or are you? No, no, no. I'm not contesting. I'm not stating that. I'm not aware of a case where the officer's been provided with plausible explanations for the condition that he's seeing. Two different plausible explanations that combine together where there's a clear articulation of what is the standard supposed to be? At what point was Officer Durbin supposed to realize that he was required to immediately summon medical care? We know that when she becomes non-responsive, of course he has to. That's clearly established, but prior to that point in time, when does this attach? It really seems to me that what you're arguing is the factual side, not the legal side, but I'm really trying to make sure that I understand your position clearly. I'm trying to argue that the constitutional obligation that we're talking about was not clearly established at the time under these circumstances. Do you mean that it didn't arise? He didn't have the obligation to act because he didn't perceive the facts? Or do you mean that it is not clearly established that if this person had been in medical distress, he had an obligation to get her help? I don't think there's any authority indicating that he could not conclude that what he was witnessing was a ruse coupled with a medical condition that had been described to him as opposed to an emergent medical situation, Your Honor. I'm not aware of any case that states that, that imposes that obligation. But you think this is a legal issue? Whether or not there's authority out there which would apply in that situation, yes, Your Honor. You've answered my question. Thank you. Can I ask, what is the right question? Is it whether or not a reasonable officer would have made the same mistake of fact, or is it a reasonable officer would have known that she was in medical distress? It's whether or not a reasonable officer would have made the same mistake of fact, Your Honor. And I think a reasonable officer could have made the same mistake of fact. Then the question is, was it reasonable for the officer to misperceive the facts? Yes. What is your authority? I'm sorry, go ahead. I just want to know what your authority is for that framing of the issue. Because it is the plaintiff's burden to establish that qualified immunity does not apply, Your Honor. But what's your case law? What's your best case for what you just said right now? Uh, when we're talking about a mistake of fact in this jurisdiction, um, you are looking at the Jensen case in this jurisdiction where an officer was accidentally shot during the course of a raid. And in those circumstances, there were no facts present which supported the officer's assertion that he was not able to determine that, in fact, this was not one of the occupants, but instead was another officer. And the circumstances there were very different from what we have here, aside from the fact that it was excessive force. The concern there was the fact that the encounter took place in such a short time. I think it was less than three seconds after he had first perceived the officer. And so, there were no facts there that would have supported an inference that it was plausible that the officer had engaged in a reasonable mistake of fact. But that's very different from the case that we have here today. We have repeated insistence from Ms. Jenkins, even at times when she is crying out in pain, help me, help me, and he inquires of her what's going on. Her response is, I don't want to go to jail. Now granted, Ms. Jenkins could have meant by that statement that I know I'm overdosing, I'm concerned, but I don't want to go to jail. But there's no way for Officer Durbin to know that. He has no information, he's received no information that would tell him that the cause of her distress is an overdose, something that could be fatal. He does not know that. It seems like you have agreed that it was clearly established that an officer needs to get medical care for someone who is obviously in medical distress. Now you're arguing that it was not obvious that she was in medical distress, but why isn't it a factual question whether she was in medical, whether it was obvious that she was in medical distress or a reasonable person would think she was in medical distress? And if it's a factual question, why isn't that something to be resolved in a later stage of the case when we're talking about the motion to dismiss stage? Because there's no information that's telling Officer Durbin that his conclusions are wrong, Your Honor. So you think there's nothing in this record, zero that would ever make someone think this person was in medical distress? That's what you're saying? No, I'm saying that he didn't have any information that would cause him to doubt his conclusions. He had been informed what the reason for her nausea was, her discomfort, her stomach pain. He had been told that at the beginning of the encounter. That's one thing. Then he had been repeatedly told that she does not want to go to jail and been given very detailed reasons as to why that. What's the piece? Yes, Your Honor. I'm sorry. No, I interrupted you. So it's clear, though, at the end, he accuses her of faking, right? Yes, Your Honor, he does. So it would be a reasonable factual inference in favor of plaintiffs that he thought she was faking the whole time, right? In favor of plaintiffs or in favor of the defense? No, I'm saying plaintiffs could say you could infer from that that he thought she was faking the whole time. Potentially, you could, yes. And wouldn't it be a different question? Would a reasonable officer the whole time thought she was faking as opposed to what a reasonable officer believed she wasn't suffering or might not be suffering from medical distress? If we thought that it was plausible to assert that no reasonable officer could have thought she was faking the whole time, doesn't that get us to what plaintiffs want us to do? Whereas that might not be where we were. If there were nothing suggesting he thought she were faking, just that he didn't think she was in serious medical distress? Not on the record that we have here, Your Honor, because throughout the riot, every time she cries out, Officer Durbin continues to inquire, to ask her what the problem is. That doesn't demonstrate that he believes she was faking such that he was going to completely ignore her cries and not attempt to ascertain. But you just told me that we could take an inference in favor of plaintiff that because he said she was faking at the end, he thought that the whole time. As your question was outlined, yes, but the additional facts that I'm offering, I think changes the answer and that's part of the record too, Your Honor. Counsel, how do you square your contention that the officer or his contention that he sincerely believed she was faking with his repeated checks on her status? That's a plaintiff, he asked, he checked to see if she was breathing. If he thought she was faking, why would he be concerned if she was breathing? Why would he be concerned if she was breathing? Why did he stop his car? Why did he say you need to stay awake? Those are all consistent with someone who's concerned that she's actually in medical distress. It's his duty to continue checking. If there's any reason, if there's any possibility that that is what's going on, he absolutely has to check on her and that's what he did. So he had reasons though to check to see if she's still breathing. He said you need to stay awake. So that implies he knew she was losing consciousness. I think what that implies is that he understands that it's his obligation to care for her, that he has to continue checking on her to make sure that she is okay, that she is continuing to respond. And that's what he confirmed throughout the course of that ride. She did continue to respond to him, even at the station. Yes, Your Honor. But he can be wrong. He just can't be unreasonable. He can be wrong and still be entitled to qualified immunity. He just can't be unreasonable. What's your very best argument, given that the video is incorporated into the complaint, that this complaint doesn't survive 12 v. 6? I think the best argument is that that video does not display an officer who, as you were saying, Your Honor, simply ignored Ms. Jenkins and made no attempt whatsoever to ensure that she was okay. He continued to respond to her cries. He continued to take appropriate action to confirm that she was still aware, that she was still responsive. And you don't view that as viewing the facts in light most favorable to the defense? I think those are just the facts that are depicted in the video, Your Honor. So viewing in light most favorable to the plaintiff, because at one point it seemed like when he opened the door, her head sort of fell out. So how was, I guess I'm trying to reconcile that visual record with, he, she kept saying she was okay. And that all, as long as he heard that she was okay, even though sometimes when she said it, her voice was very weak or was very pleading. As long as, we have to take that he thought she was malingering or faking and that's it? We don't compare it to the actual record and in the light most favorable to the plaintiff? No, Your Honor. I'm not trying to say that, but turning to that point in the video, I'm familiar with what you're talking about. After that point in the video, Ms. Jenkins sat back up in the back of the patrol car because Officer Durbin says to her after he gets back into the car, you can lay down if you want to. So she was sitting back up. I don't recall that. I do recall that they fingerprinted her. She was completely limp while they were fingerprinting her. She was. She was laying on the ground, Your Honor. But she also stood up as they were putting her back into the car. Officer Durbin was getting assistance from the other officer who had brought the mobile fingerprinter. She stood up and was leaning into the car. And then she, when they told her that she was going to jail, she sat back. So she was still moving, Your Honor. But we're going back and forth. And again, this goes to the standard of plausibility and looking in the light most favorable to the plaintiff. And I just raise that because I'm just trying to draw out how isn't it possible that when viewing this in the light most favorable to the plaintiff, and we're just talking about plausibility, that a reasonable or the decision from another officer might have been different. I don't know if the standard is whether another officer might have made a different decision. It's whether an objectively reasonable officer could have made the decision that he made. But again, Your Honor, if even at that late point in the encounter, well, yes, at times she is limp. And yes, at times she does cry out. But if following those episodes, she is then standing up again or affirmatively moving in a fashion, I think Officer Durbin said, you're resisting us because she had sat back to come back out of the patrol car. That seems like a plausible basis for Officer Durbin to have concluded that what he was witnessing was not a medical emergency. It was someone experiencing nausea and someone who desperately did not want to go to jail. And are you familiar with Conn versus City of Reno? No, Your Honor, I wasn't. I was trying to look it up, but I wasn't able to. I couldn't get my internet to work. I'm sorry. I was trying to look at that. Thank you. I want to ask you this question. The same question that I asked your friend on the other side, which is, has this court found a violation of a child's 14th Amendment right to a familial relationship with their parent under similar factual circumstances? I'm not aware of that, Your Honor. And are you aware of any other circuit's case law that addresses the issue? I'm sorry. I'm not, Your Honor. Counsel, one of the things that puzzled me is this interaction between what a lot of questions have been about, which is the fact that you consider the facts in light most favorable to the plaintiff, but you also have a qualified immunity standard, which I'm not sure how clear we've been on this, but at least some of our cases seem to talk about that you ask whether or not a reasonable officer could have concluded something. Like a reasonable officer in this case, I guess, could have concluded that she was faking it. How do those two things interact? Because on one hand, how do we analyze and say, well, if we take the facts in light most favorable, the question of whether the officer was reasonable and think of could a jury conclude that this officer wasn't reasonable, that could lead to one answer. But if you say, could any reasonable officer have concluded that she was faking it, that might lead to a different question. So what's the right question to ask at this motion is misstaged, but with qualified immunity? The latter, Your Honor. The latter question is the correct question to ask, and that's whether a reasonable officer plausibly could have concluded that what he or she was witnessing was not a medical emergency, but instead was something different. Here, his belief that she was both suffering from nausea and exaggerating that condition because she desperately did not want to go to jail. And I think there's some confirmation of that very late in the video. In fact, at one point, Officer Durbin tells Ms. Jenkins, we can take you to the hospital if that's what you want, but it's only going to make this take longer. And she immediately stopped crying out. She was lying there, and she responded to him. I think she responded, yes, please, at that point. And we all know the truth. We all know what was . . .  Yes, Your Honor. Look at our cases that have this question of fact, this mistake of fact issue. It seems like the initial cases, we would ask that question of could a reasonable officer have concluded something? And then the court would decide, like I think in the Torres case, we decided it was not . . . a reasonable officer could not have. The court would decide that, like you would typically think in qualified immunity. But as we've gone on, and you can tell from the questions today, it seems like we're almost in a position more where we're saying, could a reasonable officer have concluded . . . could any reasonable officer have concluded this? Then we say, well, we kind of mix that in with the motion to dismiss standard, which takes all the inferences in favor, and then we just kind of automatically kick it to a jury. So I'm just trying to figure out what to do with that. I don't . . . I think that's the world that we're in post-Kingsley, Your Honor. We no longer have a subjective standard, so we do have to consider these questions. And it is a much more complicated analysis. I agree. And you acknowledge you've waived the . . . Believe me, Your Honor, I'd love to argue it now, but I just don't have anywhere in the record where . . . I'm not aware of a place in the record where that argument was made previously. I'm just not. And you agree you needed to have made it previously in order to not have waived it? No, I think this court can review this case on any ground that it would like to when it grants en banc review. Absolutely, I came here prepared today to respond and to address that argument, but based upon Your Honor's questions and apparent conclusions, I did not go into it. But I think this court absolutely can reconsider Castro and whether or not that standard should apply when we're talking about a failure to act, when we're talking about medical care, which the Supreme Court has never addressed. Kingsley did not go into that in any respect whatsoever. So I believe that this court absolutely has the power to reconsider Castro sitting here today. That's not a decision for a litigant to make. That's a decision for the court to make when it's establishing policy for the circuit. If we were to do that, would it only affect the familial association claim that the son is bringing on his own behalf rather than the successor and interest claim that's the Fourth Amendment claim, whether it was a reasonable seizure? That would be my understanding, Your Honor. And I just want to confirm, did you say that Jensen is the case that you would cite to this as the most favorable case to your position? Yes, that was the case that I identified, Your Honor. And in that case, in fact, there was a denial of a motion to dismiss for qualified immunity, and this court affirmed that denial, correct? Yes, that's why I distinguish it, Your Honor. That's correct. Thank you, Your Honors. It's been a privilege. Thank you. Ms. Rahm, I'll give you three minutes. Okay, thank you. Your Honors, I'd like to start with something that both sides agree on. I heard my colleague on the other side say that he is not disputing that clearly established law requires obtaining medical care for someone in medical distress. He also said that there's no doubt that that requirement attached when someone is unconscious. Now, on the facts of this case, as taken on the light most favorable to JKJ, you know, Ms. Jenkins was going in and out of consciousness even on the car ride. So what I did hear my friend on the other side say was really disputing the facts here and taking inferences in favor of Officer Durbin. And... Counsel, can you address the question I was asking, which is how do you take the fact that we do need to take the facts on the light most favorable to your side, but at the same time, the qualified immunity standard, we're only supposed to deny qualified immunity if any reasonable officer could not have concluded that. Your Honor, I think under this court's case law, the qualified immunity clearly established inquiry really just puts the burden on the plaintiff to point to prior case law that clearly establishes the law. It does not require that sort of reasonableness inquiry. Instead, the question about what is objectively reasonable is the Fourth Amendment inquiry that happens at the constitutional violation prong. And that is a jury question, unless this court is willing to conclude that it is not even plausible for a reasonable officer to understand that Ms. Jenkins was in medical distress. And I'll point this court to specific language from Torres, from Wilkins, that frames it in that language. So in Torres, the court said, when there's a mistake of fact, quote, we ask whether a reasonable officer would have or should have accurately perceived that fact, end quote. And so on that analysis here, it is certainly plausible that a reasonable officer seeing and hearing everything Officer Durbin saw and heard could have understood that Ms. Jenkins was in medical distress. Counsel, if the standard was whether or not a reasonable officer, well, the officer was giving all the facts in light of misjunction, would you still deny qualified immunity in that case? I would, Your Honor. Why under that standard? How? Because I think it's still plausible for a jury to reach that conclusion on the quite extreme facts that we have here. The mistake was so unreasonable that she's not? That's right, Your Honor. And I mean, I'll note first that I don't think that's the standard for the reasons I've just mentioned. But accepting, if this court were to say that was the standard, even then the facts that we have here were quite extreme. My friend on the other side said she was actually standing as she was being stuffed back into the car. That is not true. If you watch the video, she is so limp that they stuff her in the car, drag her across the seat. Officer Durbin did say something about resisting, and I believe that's because she was so limp that she was essentially dead weight. And he construed that in that way. And so here, the only way my friend on the other side was able to argue that this court should rule in his favor is by construing the facts in his favor. That is not permitted at the motion to dismiss stage. Your Honor, with that, I ask that this court reverse. Thank you. Before we conclude, I just want to note that this is a very difficult case, very challenging case. And I think both of you presented yourself very well and acquitted yourself quite well here today. Ms. Rahm, Mr. Jardon, thank you very much for your oral argument presentations. The case of J.J. individually and successor in interest to the deceased, Alaya Jenkins, by and through his guardian, ad litem Jeremy Hiller versus the city of San Diego is now submitted. We are adjourned. Thank you.
judges: MURGUIA, CHRISTEN, FRIEDLAND, BENNETT, MILLER, BADE, LEE, BUMATAY, VANDYKE, SUNG, DESAI